VICKI S. HENSLER, Plaintiff-Appellant, v. BUSEY BANK, Defendant-Appellee.

Fourth District   No. 4—91—0913

Opinion filed July 9, 1992.

Thomas E. Harrington and Richard J. Winkel, Jr., both of Harrington, Porter & Winkel, of Champaign, for appellant.

James W. Evans, Ltd., of Evans & Froehlich, of Champaign, for appellee.

JUSTICE McCULLOUGH delivered the opinion of the court:

Plaintiff Vicki S. Hensler filed a two-count complaint alleging defendant Busey Bank misapplied the proceeds of a life insurance policy to various notes between defendant and Downtown Electric, Inc., an Illinois corporation. Defendant filed a motion to dismiss plaintiff's complaint for failure to state a cause of action (Ill. Rev. Stat. 1989, ch. 110, par. 2—615(a)) for either breach of contract or breach of a fiduciary duty, which the trial court granted on November 13, 1991. Plaintiff appeals, contending her complaint states a cause of action for breach of contract and breach of a fiduciary duty. We reverse in part and affirm in part.

Plaintiff's husband, Guy Jack Hensler (decedent), was president of Downtown Electric, Inc., which was dissolved on February 1, 1991. On November 27, 1984, decedent executed a guarantee whereunder he guaranteed defendant the payment of "any and all indebtedness, obligations and liabilities" of Downtown Electric.

Downtown Electric obtained four loans from defendant to help maintain the corporation. Two of these loans were evidenced by term notes, dated March 14, 1985, and April 29, 1988, which required monthly installment payments. The April 29, 1988, term note was secured by a mortgage on plaintiff's home. The other two loans were evidenced by two demand notes, dated April 29, 1988, and October 7, 1988, which required monthly interest payments. All four notes contained a standard acceleration clause which gave defendant the option, without notice, demand or presentment of any kind, to declare the entire balance of the note immediately due and payable. The demand notes could be accelerated at any time while the term notes needed an event of default to be accelerated. Failure to make a monthly installment payment was an event of default sufficient to trigger the acceleration clause in the term notes.

On July 16, 1985, decedent applied to CNA Insurance Companies for a $250,000 life insurance policy. That policy was subsequently issued and defendant "as its interest may appear" was named as the beneficiary. The balance of the proceeds, if any, was to go to decedent's survivor. On April 26, 1986, decedent collaterally assigned this life insurance policy to defendant.

On June 29, 1990, decedent died following an extended illness. At the time of his death, Downtown Electric was indebted to defendant on the four notes previously mentioned and it had failed to make the monthly installment payments on each of the four notes. Downtown Electric was in arrears on the four notes in the amount of $30,000. Defendant failed to invoke any of the acceleration clauses contained in the notes and did not demand the balance due on the two demand notes. At the time of decedent's death, his only personal liability to defendant existed in the guarantee executed on November 27, 1984.

Pursuant to the collateral assignment of decedent's life insurance policy, CNA Insurance paid the proceeds of that policy to defendant. Defendant then applied that money to completely pay off three of the notes of Downtown Electric and partially pay off the fourth note. Defendant paid the term notes executed on March 14, 1985, October 7, 1988, and the demand note of April 29, 1988. The term note of April 29, 1988, which was secured by a mortgage on plaintiff's home, was partially paid with the remainder of the proceeds of the life insurance policy. A balance of $130,000 remains on plaintiff's mortgage. Defendant has made repeated demands for payment on the remaining note and has threatened to foreclose on plaintiff's home to collect the balance of that note.

Plaintiff filed her two-count complaint on August 2, 1991, seeking injunctive and declaratory relief as well as compensatory damages. Count I alleged defendant breached the provisions of the various documents in its application of the insurance proceeds. Count II of plaintiff's complaint alleged breach of a fiduciary duty in that defendant wrongfully engaged in overreaching and self-dealing by misapplying the insurance proceeds to the various loans.

On October 15, 1991, defendant filed a motion to dismiss pursuant to section 2—615 of the Illinois Code of Civil Procedure (Code) (Ill. Rev. Stat. 1989, ch. 110, par. 2—615) alleging plaintiff's complaint failed to state a cause of action for either breach of contract or breach of a fiduciary duty. On November 13, 1991, the trial court issued a letter opinion granting, with prejudice, defendant's motion to dismiss. The trial court indicated it had read and construed the documents and concluded plaintiff's complaint did not state a cause of

action for breach of contract or breach of fiduciary duty. Moreover, the trial court stated:

> "I am satisfied that the actions described in Plaintiff's complaint as giving rise to the pleaded claims are, in fact, actions by the Defendant which are within the terms of the notes, guaranty and assignment. As these actions of Defendant are within the terms of the agreement entered into by the late Mr. Hensler, the complaint cannot stand."

Plaintiff timely filed her notice of appeal.

■■ In ruling on a section 2—615 motion to dismiss, a court should deny the motion unless it clearly appears that no set of facts can be proved which will entitle the plaintiff to recover. In making this determination, the court is to interpret the allegations of the complaint in the light most favorable to the nonmovant. (*McGrath v. Fahey* (1988), 126 Ill. 2d 78, 90, 533 N.E.2d 806, 811.) In ruling on a motion to dismiss for failure to state a cause of action, a court must accept as true all well-pleaded factual matters in the complaint and all reasonable inferences that may be drawn therefrom, but need not accept conclusions of law, argumentative matter, or conclusions of fact unsupported by allegations of specific facts upon which such conclusions rest. (*Kennedy v. First National Bank* (1990), 194 Ill. App. 3d 1004, 1009, 551 N.E.2d 1002, 1005.) Unless it clearly appears that no set of facts could be established which would entitle plaintiff to relief, a dismissal with prejudice should not be made. *McGann v. Illinois Hospital Association, Inc.* (1988), 172 Ill. App. 3d 560, 564, 526 N.E.2d 902, 903.

The first issue for our resolution is whether count I of plaintiff's complaint states a cause of action for breach of contract. Is there no set of facts which could be pleaded and proved which would entitle plaintiff to relief?

Plaintiff contends the resolution of this dispute depends upon the interpretation of the phrase "then existing Liabilities" as it is used in paragraph E(1) of the collateral assignment of decedent's life insurance policy. Plaintiff suggests, because defendant failed to invoke the acceleration clauses in the two term notes, the only amount due on those notes was the amount of the past-due installments. Similarly, plaintiff argues the only amount due on the two demand notes, since defendant failed to "demand" the entire balance due, was the amount needed to bring the notes current. Plaintiff concludes the total amount due on the four notes, approximately $30,000, constituted the "then existing Liabilities" of decedent to defendant.

Thus, plaintiff argues that amount, $30,000, should have been paid out of the proceeds of the life insurance policy because that was the only amount decedent would be liable for under his guarantee. Plaintiff further contends the parties intended the life insurance proceeds to be used to pay off the mortgage on her home, which was $130,000, thus leaving a balance of $90,000 to be paid to her pursuant to paragraph E(1) of the collateral assignment.

Paragraphs D and E(1) of the collateral assignment of the life insurance policy state:

"This assignment is made and the Policy is to be held as collateral security for any and all liabilities of the undersigned, or any of them, to the Assignee, either now existing or that may hereafter arise in the ordinary course of business between any of the undersigned and the Assignee (all of which liabilities secured or to become secured are herein called 'Liabilities').

The Assignee covenants and agrees with the undersigned as follows:

(1) That any balance of sums received hereunder from the Insurer remaining after payment of the then existing Liabilities, matured or unmatured, shall be paid by the Assignee to the persons entitled thereto under the terms of the policy had this assignment not been executed."

Thus, the proceeds of the life insurance policy were to pay "any and all liabilities" of decedent to defendant and any monies remaining after payment of the then existing liabilities were to be paid to plaintiff as the person other than defendant entitled to the proceeds of the life insurance policy.

In *Tri State Bank v. Colby* (1986), 141 Ill. App. 3d 807, 490 N.E.2d 1037, defendants had executed two notes to plaintiff with two refrigerated trailers as collateral. In addition, the security agreement for each note contained a provision in which defendants granted plaintiff a security interest in any monies on deposit with plaintiff. The default provision of the security agreement provided that failure to pay any installment caused a default, thereby allowing plaintiff to demand immediate payment of the balance due on the note and to apply the security to payment on the note. Defendants eventually failed to make the monthly installments on the notes and plaintiff froze defendants' savings account. Plaintiff then brought an action to recover on the two notes which were in default and defendants counterclaimed for the wrongful conversion of their savings account. The trial court granted summary judgment to plaintiff awarding it damages in the amount of the note plus interest and also dismissed defendants' coun-

terclaim for the wrongful conversion of the money in the savings account. *Tri State Bank*, 141 Ill. App. 3d at 808, 490 N.E.2d at 1037.

On appeal, the court concluded plaintiff acted improperly in freezing defendants' entire savings account. The court stated since plaintiff had not accelerated the two notes until after the savings account was frozen, plaintiff was only entitled to set off an amount equal to the indebtedness which had matured at that point. Specifically the court stated:

> "A default in any monthly installment did not automatically make defendants liable for the outstanding balance. This is evident from the language of the acceleration clause contained in each security agreement. The accelerating provisions state that in the event of a default, 'Lender *can then* demand immediate payment of the outstanding balance of this note \*\*\*.' (Emphasis added.) Plaintiff therefore only had the *option* to accelerate the payments upon default. It is well settled that an option to accelerate the maturity of a note for the nonpayment of an installment 'requires some affirmative action on the part of the holder, evidencing his election to take advantage of the accelerating provision, and that until such action has been taken the provision has no operation.' Annot., 5 A.L.R.2d 968, sec. 3, at 970 (1949)." (Emphasis added.) (*Tri State Bank*, 141 Ill. App. 3d at 812, 490 N.E.2d at 1040.)

The court noted the record indicated plaintiff attempted to accelerate the notes *after* it had frozen defendants' savings account. Had plaintiff accelerated the notes prior to seizing defendants' account, the court stated there would be no question that it could have legitimately set off the entire balance of the notes due since the notes would have been fully matured at that time. However, because plaintiff had not exercised its option of acceleration when it seized defendants' account, plaintiff was only entitled to a setoff in the amount equal to the indebtedness which had matured at that point; namely, the amount past due.

Generally speaking, the guarantor is a favorite of the law. (*Heritage Bank v. Bruti* (1986), 141 Ill. App. 3d 107, 108, 489 N.E.2d 1182, 1183.) A guarantor is to be accorded the benefit of any doubt which may arise from the language of the contract, and his liability is not to be varied or extended by construction or implication beyond its precise terms. (*McLean County Bank v. Brokaw* (1988), 119 Ill. 2d 405, 412, 519 N.E.2d 453, 456.) The liability of a guarantor is strictly construed in his favor and against the party in whose favor the guar-

anty runs. *Lincoln Park Federal Savings & Loan Association v. Carrane* (1989), 192 Ill. App. 3d 188, 191, 548 N.E.2d 636, 638.

■ The general rule is that the liability of a guarantor is limited by and is no greater than that of the principal debtor and that if no recovery could be had against the principal debtor, the guarantor would also be absolved from liability. A guaranty of the payment of an obligation of another is an absolute undertaking imposing liability upon the guarantor immediately upon the default of the principal debtor. No liability may be imposed upon the guarantor unless and until the principal debtor has defaulted and this is true whether the guaranty is coextensive with or broader or narrower than the principal contract. Where under the conditions of the contract no liability has arisen on the part of the principal, there is no liability on the guarantor. *Kreizelman v. Stevens* (1941), 311 Ill. App. 161, 168, 35 N.E.2d 532, 535, *aff'd* (1942), 381 Ill. 73, 44 N.E.2d 873.

■ In conclusion, we are not convinced that there is *no* set of facts which plaintiff could plead and prove to establish her entitlement to relief. If defendant was required to accelerate the notes and give plaintiff notice of its election to do so before applying the proceeds of the life insurance policy to the notes, and failed to perform these acts, a jury could conclude defendant misapplied the proceeds of the life insurance policy. An ambiguity exists as to the extent of decedent's liability to defendant. It was error to grant defendant's motion to dismiss count I of plaintiff's complaint. Therefore, we reverse the trial court's dismissal with prejudice of count I of plaintiff's complaint and order that count reinstated.

Plaintiff next contends count II of her complaint states a cause of action for breach of a fiduciary duty. She alleges defendant was in a position of dominance and superiority to her as it had exclusive control of the insurance proceeds which she further suggests were held in an actual or constructive trust. She suggests defendant misapplied the proceeds from the insurance policy and thus breached a fiduciary duty owed to her by virtue of its having control of these funds.

■ A fiduciary relationship exists when there is a special confidence reposed in one, who, in equity and good conscience, is bound to act in good faith and with due regard to the interest of the one reposing the confidence. The factors to be considered in determining whether a fiduciary relationship exists include the degree of kinship, disparity of age, health and mental condition, and the extent to which the allegedly servient party entrusted the handling of his business and financial affairs to and reposed faith and confidence in the dominant party. *Kolze v. Fordtran* (1952), 412 Ill. 461, 468, 107 N.E.2d 686,

690; *Lamb v. Lamb* (1984), 124 Ill. App. 3d 687, 690-91, 464 N.E.2d 873, 876.

■■ ■ A fiduciary or confidential relationship may be found in one of two ways. A fiduciary relationship may be presumed from the relationship of the parties, such as an attorney-client relationship, or may be found to exist by the facts of a particular situation, such as a relationship where trust is reposed on one side and there is resulting superiority and influence on the other side. The burden of pleading and proving the existence of a fiduciary relationship lies with the party seeking relief, and where the alleged relationship does not exist as a matter of law, facts from which a fiduciary relationship arises must be pleaded and proved by clear and convincing evidence. (*Farmer City State Bank v. Guingrich* (1985), 139 Ill. App. 3d 416, 422-24, 487 N.E.2d 758, 762-63.) A fiduciary relationship does not exist as a matter of law between a guarantor and a creditor. (*Farmer City State Bank*, 139 Ill. App. 3d at 424, 487 N.E.2d at 764.) In order to establish a fiduciary relationship, the trust and confidence allegedly reposed by the first party must actually be accepted by the second party. *De Witt County Public Building Comm'n v. County of De Witt* (1984), 128 Ill. App. 3d 11, 26, 469 N.E.2d 689, 700.

■ Plaintiff has failed to plead any facts supporting her contention that a fiduciary relationship existed between herself and defendant. Count II of plaintiff's complaint incorporates paragraphs 1 through 27 of count I, which contains many conclusions of law regarding the amount of decedent's liability to defendant at the time of his death and the proper application of the insurance proceeds. The remaining allegations in count II also contain conclusions of law regarding defendant holding the funds in trust for plaintiff and defendant's engaging in self-dealing and overreaching when it applied the proceeds to the various loans. However, plaintiff did not plead any facts to show the existence of a fiduciary relationship between herself and defendant nor facts to establish either an actual or constructive trust.

A fiduciary duty may have existed between decedent and defendant, but not as a matter of law. Any relationship of that type between decedent and defendant would have to have been pleaded and proved by clear and convincing evidence, which plaintiff failed to do. Clearly, defendant has not accepted any trust and confidence placed in it by plaintiff. Plaintiff failed to plead that she entrusted the handling of her business affairs in defendant or that she placed her trust and confidence in defendant. In fact, the only relationship between defendant and plaintiff arose because she was a contingent beneficiary under decedent's life insurance policy and the collateral assignment to defend-

ant of that policy, and the fact she signed the mortgage to defendant and was married to decedent, who had a business relationship with defendant.

Therefore, as plaintiff failed to allege facts to support a cause of action for breach of a fiduciary duty, and no set of facts could ever be pleaded to show the existence of such a relationship and a subsequent breach thereof, the trial court properly dismissed with prejudice count II of plaintiff's complaint.

Affirmed in part; reversed in part and remanded with directions.

KNECHT and COOK, JJ., concur.